**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| 1899 Holdings, LLC, et al. | * | |
| | * | |
| v. | * | Civil No. CCB-12-297 |
| | * | |
| 1899 Limited Liability Company, et al. | * | |
| | * | |
| | * | |
| | ****** | |

**MEMORANDUM**

Plaintiffs, 1899 Holdings, LLC ("Holdings"), Stanley Keyser, Keyser Development

Corporation, Keysco Realty Corporation, Queen Anne Belvedere Revitalization Limited

Partnership, Nineteen/Twenty-One West Preston, LLC, and IMDBOSS, LLC, all citizens of

Maryland, filed a multi-count complaint against defendants, 1899 Limited Liability Company

("1899 LLC"), Small Deal Fund LP ("Small Deal"), 1899 Special Member, LLC, and Raleigh

Consultants, LLC, in the Circuit Court for Baltimore City. The defendants, all LLCs and non-

citizens of Maryland, removed the case to the United States District Court for the District of

Maryland under federal diversity jurisdiction, where an amended complaint was filed. Now

pending before the court is defendants' motion to dismiss all counts of the amended complaint.

The court heard oral argument on December 20, 2012, and will grant defendants' motion to

dismiss for the following reasons.

**Background**

The following facts are alleged by plaintiffs in their amended complaint and arise from

the historic redevelopment of the former Northern District Police Station, now known as

Hampden Village Centre in the City of Baltimore (the "Project"). (Am. Compl. ¶ 1, ECF No.

21.) The Project was initiated in 2000. (*Id.* ¶ 13.) In 2001, the two original members of 1899

1

LLC, Keyser Development Corporation and W.L. Blair Development, LLC, began working on the Project and achieved an historic designation for the police station in order to obtain federal and state historic tax credits.  (*Id.* ¶ 13-14.)  As construction progressed, however, "numerous unforeseen difficulties, including unanticipated environmental hazards, . . . delayed and greatly increased the development costs of the Project."  (*Id.* ¶ 16.)  From 2000 through 2008, plaintiffs paid, "at various times and in various amounts, sums totaling in excess of $3.2 million to or on behalf of 1899 LLC" as enumerated in Exhibit 1 attached to the amended complaint.  (*Id.* ¶ 17; Am. Compl., Ex. 1, ECF No. 21-1.)

According to plaintiffs, Stanley Keyser and John Bowman, Jr., President of investment firm Tax Credit Capital, LLC, agreed in 2005 that defendant Small Deal, a firm affiliated with Tax Credit Capital, would invest approximately $1.9 million in the Project in exchange for profits and federal and state tax credits.[1]  (*Id.* ¶ 18.)  On January 31, 2006, Holdings and Small Deal entered into an Amended and Restated Operating Agreement of 1899 LLC ("Operating Agreement") in which Keyser Development Corporation and W.L. Blair Development LLC withdrew as members of 1899 LLC, Holdings was designated the Managing Member, and Small Deal was designated the Investor Member.  (*Id.* ¶19.)

On behalf of 1899 LLC, Holdings entered into a construction management and development agreement with Raleigh Consultants on August 12, 2008, which provided that Project obligations would be funded by Small Deal.  (*Id.* ¶ 20.)  At a meeting in 2008, Bowman promised that Small Deal would make sufficient additional cash contributions to the Project to avoid default and would provide additional funds to finish the Project, which was then "just months" from completion.  (*Id.* ¶ 24.)

---

[1] While Keyser and Bowman initially estimated the tax credits to be about $1.9 million, the credits had an estimated value of over $3.5 million as of August 2008.  (*Id.*)

On September 23, 2008, Stanley Keyser, on behalf of Holdings, executed a First Amendment to Operating Agreement of 1899 Limited Liability Company ("Amendment") with Small Deal and the Maryland Historic Tax Credit Fund LP, providing, *inter alia*, for Small Deal and the Maryland Historic Tax Credit Fund to contribute additional capital to the Project.

On November 13, 2008, Small Deal alleged that Holdings had breached the Operating Agreement; Holdings disputes those allegations.  (*Id.* ¶ 26.)  In a letter dated December 8, 2008, Small Deal informed Holdings that it would remove Holdings as Managing Member on December 15, 2008, unless Holdings cured its alleged defaults.  (*Id.* ¶ 27; Mem. Supp. Mot. to Dismiss, Ex. C, at 15, ECF No. 27-4.)  Holdings disputed Small Deal's allegations in a letter dated December 11, 2008.  (Am. Compl. ¶ 27.; Am. Compl., Ex. 2, ECF No. 21-2.)

On or after December 15, 2008, Holdings was replaced as Managing Member of 1899 LLC by 1899 Special Member LLC.  (Am. Compl. ¶ 28.)  Defendants 1899 LLC and its constituent members have received "hundreds of thousands of dollars of tax credits as a result of the financial contributions and other efforts" of plaintiffs, and "the Project has raised substantial revenues from its successful leasing of office space to tenants." (*Id.* ¶ 30.)

Plaintiffs allege that Bowman of Small Deal had agreed with Stanley Keyser that the amounts already paid and to be paid by plaintiffs for the benefit of the Project would be considered loans to 1899 LLC and not capital contributions.  (*Id.* ¶ 31.)  They further agreed that 1899 LLC was obligated to repay the loans.  (*Id.*)  According to plaintiffs, Small Deal, through its agents and representatives, including Louis Oberle of Raleigh Consultants, "acknowledged, agreed to, and acquiesced in the treatment of the advances as loans, and that they would be repaid with interest" upon completion of the Project "on numerous occasions until the end of 2008." (*Id.*)  One loan—$500,000 that Stanley Keyser personally obtained from Orlo Holding

NY, LLC and paid into the Project—was expressly memorialized as a loan to 1899 LLC in the

Amendment.  (*Id.*)  Plaintiffs allege that Small Deal and 1899 LLC repudiated and breached their

agreement by now asserting that the advances were not loans and will not be repaid as such.

(*Id.*)

In late 2009, Holdings received an IRS Schedule K-1 for the year 2008 stating that it had

made capital contributions of $2,455,716 and had received distributions of $2,455,656.  (*Id.*

¶ 32.)  Holdings claims it had received no such distributions and was given no explanation for

the purported distributions.  (*Id.*)

**Legal Standard**

In reviewing defendants' motion to dismiss for failure to state a claim under Federal Rule

of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and views the

complaint in the light most favorable to plaintiffs.  *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d

176, 180 (4th Cir. 2009) (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.

1993)).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court,

however, is not required "to accept as true a legal conclusion couched as a factual allegation."  *A*

*Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 132 S. Ct.

1960 (2012) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).

The court may consider documents attached to the complaint, as well as documents

attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not

disputed.  *Philips*, 572 F.3d at 180; *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150,

154 (4th Cir. 2009); *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

Additionally, a federal court may take judicial notice of documents from prior state court proceedings and other matters of public record in conjunction with a Rule 12(b)(6) motion to dismiss without converting it into a motion for summary judgment. *Philips*, 572 F.3d at 180 (citing *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986)); *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009); *see also* Fed. R. Evid. 201 (Judicial Notice of Adjudicative Facts).

## Analysis

The first twelve counts of Holdings' amended complaint allege that the failure of 1899 LLC to pay Holdings certain amounts breaches a valid contract between the parties or, in the alternative, constitutes unjust enrichment of 1899 LLC.

### I.      Parol Evidence Rule Bars Breach-of-Contract Claims.

Holdings' breach-of-contract claims for 1899 LLC's failure to repay the amounts Holdings paid into the Project fail, because the Operating Agreement and its Amendment signed by both parties preclude such claims. The parol evidence rule bars the consideration of any evidence that an oral contract exists outside of the written Operating Agreement and its amendments if the alleged oral agreement precedes, or is contemporaneous with, the written contracts. *Huggins v. Prince George's Cnty.*, 683 F.3d 525, 534 (4th Cir. 2012) (holding parol evidence rule barred plaintiff's evidence that directly contradicted subsequent written consent orders); *Calomiris v. Woods*, 353 Md. 425, 432 (1999) ("Maryland law generally requires giving legal effect to the clear terms of a contract and bars the admission of prior or contemporaneous agreements or negotiations to vary or contradict a written contractual term.").[2]

In this case, Holdings' allegation that Bowman orally agreed to treat Holdings' capital contributions as loans (Am. Compl. ¶ 31) directly contradicts the plain language of the later

---

[2] There is an exception to this rule if "the written words are sufficiently ambiguous." *Calomiris v. Woods*, 353 Md. 425, 433 (1999).

written Operating Agreement and its Amendment.[3]  The Operating Agreement provides that

Holdings, as Managing Member of 1899 LLC, was required to "cause the completion of the

rehabilitation of the Project" and fund any shortfalls to ensure Project completion.  (Mem. Supp.

Mot. to Dismiss, Ex. A, at 63, § 6.10(a), ECF No. 27-2.)  It further states that any payments the

Managing Member makes under Section 6.10 "shall be treated as a Capital Contribution to the

Company," not as a loan.  (*Id.*)  Additionally, the Operating Agreement states "there are no

outstanding loans or advances" (*Id.*, at 50, § 6.09(k)) and includes a standard merger clause,

providing that the Operating Agreement, "the Project Documents, and all other written

agreements referred to herein constitute the entire agreement among the parties and *supersede*

*any prior agreements or understandings* among them with respect to the subject matter hereof"

(*Id.*, at 87, § 14.05 (emphasis added)).

   According to plaintiffs' amended complaint, Bowman negotiated with Keyser beginning

in 2005, orally agreed to treat Holdings' contributions as loans, and then did treat them as loans

"until the end of 2008."  (Am. Compl. ¶ 18, 31.)  On September 23, 2008, however, Holdings

and Small Deal signed the Amendment ratifying the provisions of the Operating Agreement that

were not amended, including Section 6.10.  (Mem. Supp. Mot. to Dismiss, Ex. B, at 15, ¶ 15,

ECF No. 27-3.)

   Plaintiffs concede that the alleged agreement between Keyser and Bowman preceded the

written Amendment.  This prior oral agreement is, therefore, not admissible to contradict the

terms of the Amendment including its ratification of the Operating Agreement.  Accordingly,

---

[3] The court can consider the terms of the Operating Agreement and Amendment, which are
attached to defendants' motion to dismiss, because the contracts are integral to plaintiffs'
complaint.  *Philips*, 572 F.3d at 180.

Holdings' breach-of-contract claim against 1899 LLC (Count I) will be dismissed as it fails to state a plausible claim for relief under the Operating Agreement and its Amendment.

Count I is a comprehensive claim for the full amount of money Holdings alleges it is owed by 1899 LLC.  Counts III, V, VII, IX, and XI are alternative claims for the amounts owed each of the individual plaintiffs: Stanley Keyser (Count III), Keyser Development Corporation (Count V), Keysco Realty Corporation (Count VII), Queen Anne (Count IX), and Nineteen/Twenty-One West Preston (Count XI).  The amounts allegedly owed these plaintiffs add up to the $3,235,234.41-sum allegedly owed to Holdings in Count I.  Each of these breach-of-contract claims relies on the same evidence as Count I, which is barred by the parol evidence rule.  Accordingly, Counts III, V, VII, IX, and XI also will be dismissed for failure to state a claim.

## II.     Unjust Enrichment Claims Fail Because Express Contract Governs.

Counts II, IV, VI, VIII, X, and XII are alternative to the breach-of-contract claims discussed above and allege that 1899 LLC's failure to repay Holdings the amounts in question constitutes unjust enrichment.[4]  Defendants 1899 LLC argue this court should dismiss plaintiffs' unjust enrichment claims because express written contracts—the Operating Agreement and its Amendment—govern the relationship between Holdings and 1899 LLC.

Maryland law states that a plaintiff may not recover under an unjust enrichment claim if a valid express contract between the parties covers the subject matter of the claim.  *Cnty. Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96 (2000).  Accordingly, plaintiffs' unjust enrichment claims will be dismissed.

---

[4] Count II is the comprehensive claim, alternative to Count I, and Counts IV, VI, VIII, X, and XII are the alternative claims by individual plaintiffs in Counts III, V, VII, IX, and XI, respectively.

### III.     Claim for Accounting Not Valid as Independent Cause of Action.

Holdings' claim for an accounting of capital contributions fails because a demand for an accounting is generally not an independent cause of action in Maryland but rather a remedy to another cause of action.  *Orteck Int'l Inc. v. Transpacific Tire Wheel, Inc.*, 704 F. Supp. 2d 499, 521 (D. Md. 2010).  If the court dismisses all other causes of action upon which a claim for an accounting could depend, then a claim for accounting should also be dismissed.  An accounting may be available to a plaintiff, however, in conjunction with another valid cause of action or in limited exceptional circumstances.  *See Goldstein v. F.D.I.C.*, No. 11-CV-1604, 2012 WL 1819284 at *13-14 (D. Md. May 16, 2012) (enumerating exceptional cases where accounting remains independent cause of action in Maryland including where parties have fiduciary relationship).[5]

In this case, no cause of action survives the motion to dismiss and so the accounting claim cannot depend on a valid cause of action.  Further, having been removed as the Managing Member, Holdings no longer has a fiduciary relationship with 1899 LLC upon which to base a claim for an accounting under the exception in *Goldstein*.  Accordingly, the claim for an accounting in Count XIII will be dismissed.

Moreover, even if any of Holdings' claims in Counts I – XII survived the motion to dismiss, the accounting claim in Count XIII would fail because it is premature.  According to the Operating Agreement, because Holdings was removed as Managing Member in December 2008 (Am. Compl. ¶ 27), any repayment of its capital contributions is not required until the year 2023 (Mem. Supp. Mot. to Dismiss, Ex. A, at 74, § 8.04(b) ("Amounts owed to the removed Managing Member . . . shall be payable, without interest, upon the earlier of fifteen years from

---

[5] Unpublished cases are cited not as precedent but for the persuasiveness of their reasoning.

the date of removal or the sale of all or substantially all of the Company's assets.")).

Accordingly, the demand for an accounting is not ripe and may not be until 2023.

**IV.     Removal of Holdings as Managing Member Proper Under Operating Agreement.**

In Count XIV, Holdings claims that 1899 LLC's removal of Holdings as Managing

Member was without cause, in breach of the Operating Agreement, and in breach of the implied

covenants of good faith and fair dealing and the fiduciary duties Small Deal owed Holdings.

1899 LLC, however, contends that Holdings committed numerous offenses warranting its

removal pursuant to the Operating Agreement.  The plain language of Section 8.04(a) of the

Operating Agreement states,

> [t]he Investor Member shall have the right to remove a Managing Member . . . [when]
> such Managing Member shall have violated and not cured within 30 days after notice
> from the Investor Member any provision of this Agreement, including, but not limited
> to, . . . any obligation to provide funds under Sections 3.04, 6.10 and 6.11, and such
> violation causes a material adverse effect on the Company or any of its Members
> (provided that the parties hereto agree that any uncured violation to provide funds under
> Section 3.05, 6.10 or 6.11 shall be deemed to have a material adverse effect . . . ).

(Mem. Supp. Mot. to Dismiss, Ex. A, at 73, §8.04(a).)  Section 6.10 provides that "[t]he

Managing Member shall . . . cause the [Project] to be completed, in a good and workmanlike

manner, free and clear of all mechanics', materialmen's or similar liens . . . ."  (Mem. Supp. Mot.

to Dismiss, Ex. A, at 63, § 6.10(a).)  Therefore, if Holdings as Managing Member failed to cause

the completion of the Project free from liens, 1899 LLC as Investor Member properly removed

Holdings from its role as Managing Member under the terms of the Operating Agreement.

1899 LLC submits records of Maryland state court proceedings in which liens and

judgments were entered against it while Holdings was Managing Member and asks this court to

take judicial notice of those records in considering the motion to dismiss.[6]  (Defs.' Reply, Ex. 1, ECF No. 35-1 (recording mechanics' liens established against 1899 LLC in July and August 2008 and later).)  While defendants submitted other evidence of Holdings' allegedly "removable offenses," the liens alone show that the removal of Holdings as Managing Member complied with Sections 6.10 and 8.04 of the Operating Agreement.  Therefore, Holdings' claim that 1899 LLC breached the contract by removing it will be dismissed.

### V.     Breach-of-Contract Claim for IMDBOSS's Developer Fee Unripe.

In Count XV, Holdings claims that 1899 LLC has breached its contract by failing to pay IMDBOSS a developer fee.  The Amendment states that, although the developer fee is earned in its entirety upon completion of construction, "[t]he Developer shall be paid such portion of the Developer Fee from available debt and equity proceeds of the Company, to the extent such proceeds are not required for other Company purposes" and that the remainder of the fee "shall be repaid by December 31, 2017."  (Mem. Supp. Mot. to Dismiss, Ex. B, at 12, § 7.01.)  The existence of the mechanics' liens recorded against 1899 LLC indicates insufficient proceeds from which to pay a developer fee.[7]  (*See* Defs.' Reply, Ex. 1.)  Because the plain language of the Amendment provides that 1899 LLC has the right to defer payment of a developer fee until 2017, this court will dismiss IMDBOSS's claim as not yet ripe.

### Conclusion

Because this court will dismiss all claims in plaintiffs' amended complaint, it need not address in detail defendants' motion to dismiss individual defendants, Raleigh Consultants and

---

[6] The Fourth Circuit has recognized that a "federal court may consider matters of public record such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion." *Walker*, 589 F.3d at 139.
[7] *See also Brewster v. Brennan*, 567 F. Supp. 2d 791, 795-96 (D. Md. 2008) (finding claim for compensation unripe when defendant had not yet calculated value of assets to be distributed under agreement).

Small Deal.  Even if any of the claims involving these defendants survived the general motion to

dismiss, however, both parties would be dismissed because Raleigh is not a party to the

Operating Agreement and Amendment that govern and Small Deal is released from liability

according to the express terms of the Operating Agreement limiting liability of the Investor

Member.[8]  (Mem. Supp. Mot. to Dismiss, Ex. A, at 72, § 8.01.)  Similarly, plaintiffs' request for

a jury trial is now moot and would otherwise be stricken because it was waived in Section 14.13

of the Operating Agreement.  (Mem. Supp. Mot. to Dismiss, Ex. A, at 89, § 14.13.)

For the reasons stated above, the defendant's motion to dismiss will be granted.  A

separate Order follows.


January 8, 2013                                           /s/
Date                                          Catherine C. Blake
                                              United States District Judge


_____

[8] Section 8.01states: "[t]he Investor Member shall be liable only to make its Capital
Contributions as and when due hereunder.  After its Capital Contributions are fully paid, no
Investor Member shall be required to make any further Capital Contribution or lend any funds to
the Company, and no Investor Member shall be liable for any debts, liabilities, contracts, or
obligations of the Company, except as otherwise required by the Uniform Act."  (Mem. Supp.
Mot. to Dismiss, Ex. A, at 72, § 8.01.)  Holdings does not allege that Small Deal has failed to
pay capital contributions in violation of section 8.01.  (*See generally* Am. Compl.)